UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

JOSE P. TAN, LEAH N. BURGOS-TAN,        )
and THERAPEUTIC SERVICES OF             )
MORRISTOWN, INC.,                       )
                                        )
         *Plaintiffs*,                  )
                                        )
v.                                      )         Case No. 2:09-cv-25
                                        )         Judge Mattice
WILBUR SMITH ASSOCIATES, INC.,          )
                                        )
         *Defendant*.                   )

## MEMORANDUM AND ORDER

Before the Court is a Motion for Summary Judgment [Court Doc. 42] filed by

Defendant Wilbur Smith Associates, Inc.  Defendant argues that it is entitled to judgment

as a matter of law because Plaintiffs cannot succeed on any of the breach of contract,

Tennessee Consumer Protection Act ("TCPA"), or negligence claims.  Defendant argues

that Plaintiffs' TCPA claim is barred by the applicable statute of limitations, that no contract

exists between Plaintiffs and Defendant, and that Plaintiffs' negligence claims are barred

as a matter of law pursuant to the economic loss rule.

For the reasons outlined below, Defendant's Motion for Summary Judgment [Court

Doc . 42] will be **GRANTED IN PART** and **DENIED IN PART**.

## I.    FACTS

The facts, viewed in the light most favorable to Plaintiffs, are as follows.

On August 3, 2005, architect Michael Price ("Mr. Price") submitted a proposal to

Plaintiff Jose Tan ("Dr. Tan") concerning architectural services for a new Rehabilitation

Center Dr. Tan desired to construct.  (Court Doc. 45-3, Price Letter.)  In the proposal, Mr.

Price indicated that his flat $15,000 fee would include a code search to determine building requirements, review of all systems and production of construction drawings. (*Id.*) The letter states that "[s]ite engineering work is excluded from this proposal." (*Id.*) Dr. Tan accepted Mr. Price's proposal to perform this work, although the parties never executed a formal contract for these services.

In October 2005, Mr. Price solicited proposals from civil engineering firms to provide engineering work for the building. (Court Doc. 43, Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 2.) Defendant Wilbur Smith Associates, Inc. ("WSA") was one civil engineering firm that submitted a proposal. (Court Doc. 45-1 at 4-5, WSA Proposal.) After providing Dr. Tan with the proposals, Dr. Tan chose WSA's proposal. Mr. Price communicated Dr. Tan's approval by e-mail to Randy Corlew ("Mr. Corlew") of WSA on November 14, 2005 and stated, "[p]lease be advised that with this email I am authorizing you to proceed with Jose Tan's site engineering work per our conversations." (Court Doc. 45-1 at 5, Price E-mail.) Although the WSA proposal specifies that approval should be signified by a "signed original authorizing [WSA] to begin the design services," neither Mr. Price nor Plaintiffs returned a signed copy of the proposal to WSA.

WSA thereafter prepared plans and design documents which included plans for an underground vault for storm water storage and control. (Court Doc. 1-2, Compl. ¶ 8.) On December 29, 2005, Plaintiffs entered into a contract with Wild Building Contractors, Inc. ("WBC") to perform the general construction work on the building. (*Id.* ¶ 9.) Plaintiffs agreed to pay WBC $634,731 for the construction, which included the underground storm water storage vault. (*Id.* ¶¶ 10-11.) In February 2006, however, Ken Scott ("Mr. Scott") with WBC informed Plaintiffs that the plans for the underground storm water storage vault

had been rejected by the City of Morristown. (*Id.* ¶ 12.) Apparently, however, the City had

not rejected the plan and had instead requested backup calculations to support the design.

(*Id.* ¶ 13.) Because of the representations made at the time, however, Defendant and

WBC advised Plaintiffs of an alternative plan which would call for a holding or detention

pond at the rear of the property. (*Id.* ¶¶ 13, 15.) This design change resulted in Defendant

charging an additional fee for the new engineering plans, subjected Plaintiffs to additional

costs from WBC, delayed the completion of the building which resulted in lost rent and

profits, and diminished the value of the property. (*Id.* ¶¶ 15, 17.)

Plaintiffs originally filed suit against Defendant in the Circuit Court for Hamblen

County, Tennessee on February 9, 2009. (Compl.) Plaintiffs asserted that Defendant was

negligent in providing services to Plaintiffs, that Defendant breached the contract between

them by not adequately working with the City of Morristown to procure approval for the

original plan, that Defendant was negligent and breached the contract because it did not

properly communicate with Plaintiffs regarding the City's decision on the original plan, and

that Defendant's actions were unfair or deceptive in violation of the TCPA. (*Id.* ¶¶ 18-22.)

Defendant removed the case to this Court on February 25, 2009. (Court Doc. 1.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment --

and the Court to grant summary judgment -- "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of

material facts must support the position by "citing to . . . materials in the record, including

depositions, documents, . . . affidavits or declarations . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477

U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, the Court must, on a motion for summary judgment, determine whether a jury could reasonably find by a preponderance of the evidence that the plaintiff's factual contentions are true. *See id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. ANALYSIS

Defendant first argues that Plaintiffs' TCPA claim must be dismissed because the one-year statute of limitations has passed. (Def.'s Mem. at 4-5.) Defendant further argues that if the claim is not untimely, Plaintiffs have not produced any evidence that Defendant engaged in unfair and deceptive practices, and this failure is fatal to their claim. (*Id.* at 5-6.) Plaintiffs indicated in their Response that they were electing to withdraw the TCPA claim, and the Court interprets this withdrawal as a concession to the claim's untimeliness. Accordingly, Defendant's Motion for Summary Judgment as the Plaintiffs' TCPA claim is **GRANTED** and this claim is **DISMISSED WITH PREJUDICE**.

Defendant next argues that Plaintiffs' breach of contract claim must be dismissed

because Plaintiffs and Defendant did not enter into any contract. (Def.'s Mem. at 6-7.) Defendant asserts that the only contract it entered into was one with Mr. Price, and that because Plaintiffs and Defendant never had any contractual relationship, Plaintiffs cannot complain of any contract breach by Defendant. (*Id.*)

Plaintiffs, however, contend that the facts show that Plaintiffs and Defendant did have a contract. (Court Doc. 50, Pls.' Resp. to Def.'s Mot. for Summ. J. at 4-5.) Specifically, Plaintiffs state that Mr. Price solicited proposals from site engineers and reviewed those proposals with Dr. Tan, who made the decision to hire Defendant because of the price and because of his personal familiarity with Mr. Corlew. (*Id.* at 4.) Plaintiffs point out that no one -- neither Mr. Price nor Dr. Tan -- actually signed the proposal by Defendant to "accept" the contract. (*Id.* at 5.) Instead, Mr. Price e-mailed Mr. Corlew and authorized him to proceed with Dr. Tan's site engineering work. (*Id.*) Moreover, when discussing the project with Defendant, Mr. Price told Defendant's representatives that they were working for Dr. Tan. (*Id.*) Dr. Tan was present for meetings about the project and he -- not Mr. Price -- was asked to make certain decisions with regard to the project. (*Id.*) Plaintiffs assert that Mr. Price has stated in his affidavit that he did not enter into a contract with Defendant. (*Id.*) Finally, the invoices for Defendant's work were paid directly by Plaintiffs. (*Id.*)

Plaintiffs argue that these facts warrant denial of Defendant's Motion because, at the very least, they demonstrate an issue of material fact as to who was in privity of contract with Defendant. (*Id.* at 5-6.) Plaintiffs contend that Mr. Price was merely a conduit or liaison for the contract between Plaintiffs and Defendant, and Mr. Price made it clear to

Defendant that Dr. Tan was the client. (*Id.* at 6.) Plaintiffs further argue that the facts establish that Mr. Price was operating as Dr. Tan's agent in securing these services. (*Id.*) Alternatively, Plaintiffs assert that they are third-party beneficiaries to any contract that exists between Defendant and Mr. Price, such that they can still claim breach. (*Id.* at 7-8.)

"The determination of whether a contract has been formed is a question of law." *German v. Ford*, 300 S.W.3d 692, 701 (Tenn. Ct. App. 2009); *see also Jones v. LeMoyne-Owen College*, 308 S.W.3d 894, 904 (Tenn. Ct. App. 2009). The Court therefore rejects Plaintiffs' assertion that the existence of the contractual relationship is a question for the jury.

The Court also rejects Defendant's argument that it was in a contractual relationship with Mr. Price, not Dr. Tan. As Defendant points out, there must be an offer, acceptance, and mutual assent to create a contract. (Def.'s Mem. at 6.) Here, the facts show that the offer was made by Defendant and sent to Mr. Price. The letter, while addressed to Mr. Price, is in reference to "Engineering Services for Jose Tan Rehabilitation Clinic." (Court Doc. 45-1 at 3.) Mr. Price consulted with Dr. Tan, Dr. Tan chose to accept Defendant's proposal or offer, and Mr. Price communicated that acceptance to Defendant. Defendant knew that Mr. Price was working on a project for Dr. Tan and that the work proposed would be for the benefit of Dr. Tan, as evidenced by the electronic mail exchange between Mr. Corlew and Mr. Price. (Court Doc. 45-1 at 5.) Mr. Corlew sent an e-mail to Mr. Price which read "I think we can do Jose Tan if you want to authorize us to proceed" and Mr. Price responded, "Please be advised that with this email I am authorizing you to proceed with Jose Tan's site engineering work per our conversations." (*Id.*)

-7-

The work, therefore, originated with Dr. Tan and was for the benefit of Dr. Tan. It did not originate with Mr. Price, and Mr. Price did not stand to benefit from the formation of a contract with Defendant or Defendant's provision of engineering services. There is no indication that Defendant did not understand that the proposed work would be performed for Dr. Tan, not Mr. Price. In fact, Mr. Price testified that he specifically told Mr. Corlew that Defendant was providing these services for Dr. Tan, not him. (Court Doc. 45-5, Price Dep. at 14, 23.) In addition, Mr. Price did not accept the contract with Defendant by signing the proposal and never paid Defendant for the work performed. Although the invoices were sent to Mr. Price, they were paid directly by Plaintiffs. Finally, Mr. Price has specifically denied entering into any contract with Defendant. (Court Doc. 50-1, Price Aff. ¶ 6.) The Court concludes that Mr. Price and Defendant were not parties to the contract.

Instead, from the facts before it, the Court concludes that there is a genuine issue of material fact as to whether an agency relationship existed between Dr. Tan and Mr. Price such that a contract exists between Dr. Tan and Defendant. Plaintiffs make this argument by pointing to the facts that support the existence of a contract between Dr. Tan and Defendant, and there are ample facts which might support the existence of such a relationship. In their Response, Plaintiffs contend that, "*acting through Price*, they hired the defendant to provide certain engineering and design services . . . ." (Pls.' Resp. at 1.) In addition, Plaintiffs assert that Mr. Price acted on behalf of Dr. Tan by soliciting proposals for the site engineering work. Mr. Price then took these proposals to Dr. Tan, who selected -- and accepted -- Defendant's proposal. Mr. Price communicated Dr. Tan's acceptance of the proposal to Defendant to signify that Defendant could begin working on the project.

The Court finds that the two parties discussing the contract may have been in very

-8-

similar positions -- that is, just as Mr. Corlew was acting as a representative of Defendant

and had the power to bind Defendant in contract, Mr. Price may have been acting as a

representative of Dr. Tan for the purposes of obtaining site engineering work for the new

clinic and had the power to bind Dr. Tan in contract.

The Court acknowledges that Dr. Tan expressly denied that Mr. Price was his agent

during his deposition.  Specifically, Dr. Tan testified as follows:

> Q:    Well, are you saying now that Michael Price was your
>       agent, and he was authorized to enter into contracts
>       with you?
>
> A:    That's what I was trying to say earlier, that no, in terms
>       of the civil engineering, he didn't act as an agent.  I just
>       –
>
> Q:    He did not?
>
> A:    No.  I just don't know how to contact them at the time or
>       – I know that he needed to oversee everything, and so
>       him knowing, you know, the civil engineer, what they're
>       doing already and all those things will help.  You know,
>       just having one person kind of being over all in
>       planning.

(Court Doc. 45-2, Tan Dep. at 68.)  On the other hand, Dr. Tan's affidavit states that he

"authorized Michael Price to communicate on [his] behalf with defendant." (Court Doc. 50-

2, Tan Aff. ¶ 2.)  In addition, Mr. Price testified as follows as to what he told Defendant

about the contract and the relationship:

> Q:    All right, sir.  And do you typically explain to your civil
>       engineer, "Hey, look.  You're not going to be working as
>       a consultant to me; you're going to be working directly
>       for the owner, so don't think you're working for me?"
>
> A:    Yes, sir.
>
> Q:    All right, sir.  And why do you explain that to the civil

engineer?

A:      Just so they know the process.

. . .

A:      I said that I had telephone conversations where I told Mr. Corlew that Mr. Tan had approved his proposal to do the engineering services, site engineering services, for his project.

Q:      Okay. And did you go further and say, "And you're going to be working for Mr. Tan; you're not going to be my consultant"?

A:      I didn't tell – I did not say that he was not going to be my consultant, no, sir.

Q:      All right. You just basically said Mr. Tan had approved paying him $4,000 to do his engineering?

A:      That's correct.

(Price Dep. at 14, 23.) Mr. Price states in his affidavit that he "assist[ed]" Dr. Tan in selecting Defendant to perform the engineering services, but also states that "[t]he contract for provision of civil site engineering services . . . was directly between [Defendant] and Dr. Tan." (Price Aff. ¶¶ 5, 7.)

Regardless of these statements, however, the existence of an agency relationship "does not require an explicit agreement, contract, or understanding between the parties." *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000). "[W]hen 'the facts establish the existence of an agency relationship, it will be found to exist whether the parties intended to create one or not.'" *Id.* (quoting *Harben v. Hutton*, 739 S.W.2d 602, 606 (Tenn. Ct. App. 1987)). "In its broadest sense, the concept of agency 'includes every relation in which one person acts for or represents another.'" *Id.*

-10-

Tennessee courts have consistently held that whether an agency relationship exists "'is a question of fact under the circumstances of the particular case; and whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreement or acts.'" *Id.* (citing *McCay v. Mitchell*, 463 S.W.2d 710, 715 (Tenn. Ct. App. 1970)); *see also Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008); *Johnson v. LeBonheur Children's Medical Center,* 74 S.W.3d 338, 343 (Tenn. 2002). "The existence of an agency relationship is generally a factual question . . . . Resolution of the agency issue will require the weighing of evidence and the evaluation of credibility, tasks not appropriate for summary judgment." *Hagan v. Phipps*, No. M2010-00002-COA-R3-CV, 2010 WL 3852310, *5 (Tenn. Ct. App. Sept. 28, 2010) (citation omitted).

The Court concludes that the existence of an agency relationship is a genuine issue of material fact for the jury as factfinder, such that summary judgment on the breach of contract claim is inappropriate. Should the jury determine that an agency relationship did exist, the Court would then decide, as a matter of law, whether a contract was formed. Upon a favorable determination for Plaintiffs that a contract did exist between Plaintiffs and Defendant, the jury would next decide whether a breach of the contract occurred and, if so, the damages to which Plaintiffs are entitled. As such, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiffs' breach of contract claim.

Finally, Defendant argues that Plaintiffs' negligence claim must be dismissed because there can be no recovery in tort for purely economic loss when there is no privity of contract or injury to person or property. (Def.'s Mem. at 8.) Defendant states that

Plaintiffs' damage claims are purely economic (i.e. diminution in value, loss of use, lost income, lost profits) and these types of damages are not permitted in a negligence claim asserted pursuant to a contract. (*Id.*)

Plaintiffs argue that the economic loss rule does not apply to this case because there is privity of contract between Plaintiffs and Defendants, even if Plaintiffs are only third-party beneficiaries. (Pls.' Resp. at 8.) Moreover, because the contract is for services and not goods, and the claim is based in negligent provision of services, the rule does not apply. (*Id.* at 9.) Finally, Plaintiffs assert that their damages are not purely economic because there was damage to the property at issue due to the fact that a retention pond had to be constructed. (*Id.*) Plaintiffs argue that the retention pond diminished the use of the land and it would not have been necessary but for Defendant's negligence. (*Id.*)

The Court finds a group of recent cases from a federal court sitting in Tennessee to be most persuasive on this issue. The cases of *Ham v. Swift Transp. Co.,* 694 F. Supp.2d 915 (W.D. Tenn. 2010), *Loft v. Swift Transp. Co.*, 694 F. Supp.2d 923 (W.D. Tenn. 2010), *Pascarella v. Swift Transp. Co.*, 694 F. Supp.2d 933 (W.D. Tenn. 2010) and *Broadnax v. Swift Transp. Co.*, 694 F. Supp.2d 947 (W.D. Tenn. 2010) all address the application of the economic loss rule at length. The issue in *Ham* and the other companion cases was the application of the rule to negligence claims arising from the provision of services, rather than the purchase of goods. The *Ham* court engaged in a thoughtful analysis, acknowledging the lack of guidance from the Tennessee Supreme Court and reviewing the available case law from the Tennessee Court of Appeals. *Ham*, 694 F. Supp.2d at 921. The *Ham* court noted that the Tennessee Court of Appeals had "implicitly

restricted the economic loss doctrine to claims involving products liability or the sale of goods, at least where the plaintiff can establish a sufficiently direct relationship between the defendant's negligent act and the plaintiff's economic loss." *Id.* at 922 (citing *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 173-74 (Tenn. Ct. App. 2001)). A later unpublished opinion from the Tennessee Court of Appeals also appeared to restrict the economic loss rule to products only. *Id.* (quoting from *McLean v. Bourget's Bike Works, Inc.*, No. M2003-01944-COA-R3-CV, 2005 WL 2493479, at *5 (Tenn. Ct. App. Oct. 7, 2005)). The *Ham* court next addressed an explicit restriction of the rule in a Wisconsin Supreme Court case and noted that the Wisconsin court's basis was similar to a basis articulated by the Tennessee Supreme Court when it limited a plaintiff to UCC remedies for economic losses for a defective product, rather than permitting damages under a negligence theory. *Id.* at 922-23. The *Ham* court concluded that it believed "the Tennessee Supreme Court would rely on the fact that the economic loss doctrine has its origins in the UCC to preclude application of the doctrine to suits not involving UCC remedies, specifically those concerning the provision of services." *Id.* at 923.

After reviewing the *Ham* case and its companion cases and noting the lack of extensive Tennessee case law on this issue,[1] the Court agrees that the economic loss rule

---

[1] In the few cases available, Tennessee courts have said that "[t]he economic loss doctrine is implicated in products liability cases when a defective product damages itself without causing personal injury or damage to other property" (*Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 489 (Tenn. 2009)), that the doctrine does not apply when a plaintiff asserts a claim for negligent misrepresentation or negligent supervision (*Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718, 734 (Tenn. Ct. App. 2009)), that "[t]he rule comes into play when the purchaser of a product sustains economic loss without personal injury or damage to property other than the product itself" (*McLean*, 2005 WL 2493479, at *5), that "'Tennessee has joined those jurisdictions which hold that product liability claims resulting in pure economic loss can be better resolved on theories other than negligence'" and that the economic loss rule "provides that 'in a contract for the sale of goods where the only damages alleged come under the heading of economic losses, the rights and

-13-

is applicable to the sale of goods, but does not extend equally to contracts for the provision of services. Therefore, the rule is inapplicable to the instant case, which concerns a contract for services.

It appears to the Court that further resolution of the negligence claims may depend on the existence of a contract between Plaintiffs and Defendant. At this juncture, however, the Court need only conclude that Defendant's Motion for Summary Judgment as it pertains to Plaintiffs' negligence claims is **DENIED** because the economic loss rule does not apply to this contract for the provision of services and does not bar such claims.

## IV. CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment [Court Doc. 42] is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion is **GRANTED** as to Plaintiffs' TCPA claim and such claim is **DISMISSED WITH PREJUDICE**. Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiffs' breach of contract and negligence claims.

**SO ORDERED** this 4th day of August, 2011.

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

---

obligations of the buyer and seller are governed exclusively by the contract'" (*Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003) (quoting *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 133 (Tenn. 1995) and *Trinity*, 77 S.W.3d at 171), and that earlier cases stood for the principle that "a breach of a contract for the sale of goods resulting in consequential damages is governed by the U.C.C. despite the fact that the pleadings allege the seller negligently performed the contract" (*Trinity*, 77 S.W.3d at 173).